# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUNE GARRETT, and individuals similarly situated,

                    Plaintiff,

       vs.

**PENNYMAC LOAN SERVICES;**
**STANFORD L. KURLAND,** BOARD OF DIRECTOR;
**JAMES K. HUNT,** BOARD OF DIRECTOR;
**MATTHEW BOTEIN,** BOARD OF DIRECTOR;
**PATRICK KINSELLA,** BOARD OF DIRECTOR;
**JOSEPH MAZZELLA,** BOARD OF DIRECTOR;
**ANNE D. MCCALLION,** BOARD OF DIRECTOR;
**FARHAD NANJI,** BOARD OF DIRECTOR;
**DAVID A. SPECTOR,** BOARD OF DIRECTOR;
**THEODORE W. TOZER,** BOARD OF DIRECTOR;
**MARK WIEDMAN,** BOARD OF DIRECTOR;
**EMILY YOUSSOUF,** BOARD OF DIRECTOR;

**JP MORGAN CHASE,** NA;
**JAMES DIMON,** BOARD OF DIRECTOR;
**LINDA B. BAMMANN,** BOARD OF DIRECTOR;
**JAMES A. BELL,** BOARD OF DIRECTOR
**CRANDALL C. BOWLES,** BOARD OF DIRECTOR;
**STEPHEN B. BURKE,** BOARD OF DIRECTOR;
**TODD A. COMBS,** BOARD OF DIRECTOR;
**JAMES S. CROWN,** BOARD OF DIRECTOR;
**TIMOTHY P. FLYNN,** BOARD OF DIRECTOR;
**MELLODY HOBSON,** BOARD OF DIRECTOR;
**LABAN P. JACKSON, JR.,** BOARD OF DIRECTOR;
**MICHAEL A. NEAL,** BOARD OF DIRECTOR;

Case No. _____

3:18-cv-718

**JURY TRIAL
DEMANDED**

FILED
SCRANTON

APR 0 4 2018

PER _____
DEPUTY CLERK

1

**LEE R. RAYMOND**, BOARD OF DIRECTOR;

**BOARD OF GOVERNORS OF THE FEDERAL
RESERVE SYSTEM**, JENNIFER J. JOHNSON
SECRETARY OF THE BOARD, OR SUCESSOR;

**OFFICE OF THE COMPTROLLER OF THE
CURRENCY**, SALLY G. BELSHAW, DEPUTY
COMPTROLLER LARGE BANK SUPERVISION,
OR SUCCESSOR;

**DELAWARE DEPARTMENT
OF STATE**, JEFFREY W. BULLOCK,
SECRETARY OF STATE, OR SUCCESSOR;

**GRENEN & BIRSIC, P.C.;
BRETT L. MESSINGER, ESQ.
DUANE MORRIS;
KRISTINE M. ANTHOU, ESQ.;
ELIZABETH M. CAGNON, NOTARY PUBLIC;
WHITNEY K. COOK, EMPLOYEE;**

**TOOD MARTIN, SHERIFF MONROE COUNTY,**
Individually and Official Capacities,

AND **JOHN DOES 1-500,**


                        Defendants.
_____


                        **COMPLAINT**


        AND NOW, TO WIT, this 26th day of March, 2018, come Plaintiff, June Garrett,

proceeding Pro Se, file the within Complaint for (1) **Negligence**; (2) **Fraud**; (3) **To Set Aside**

**Sheriff's Sale**; (4) **To Void or Cancel Sheriff's Deed Upon Sale**; (5) **To Void or Cancel**

Assignments of Deed of Trust; (6) **Wrongful Foreclosure**; (7) **Unjust Enrichment**; (8)
**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law 201-1
(UTPCPL)**; (9) **Quiet Title**; (10) **Civil Rico**; (11) **Rico Conspiracy**; (12) **Rico Extortion**; and
(13) **Conspiracy Aiding and Abetting,** and state as follows in support thereof:

## PARTIES

1.       Plaintiff, June Garrett, is the Plaintiff in the underlying case and reside at 127
Rose Drive, P.O. Box 571, Saylorsburg, PA 18353. Plaintiff's Garrett is suing the Defendants on
behalf of herself as well as individuals similarly situated.

2.       Defendant, PENNYMAC LOAD SERVICES, LLC is a corporation with an office
located at P.O. Box 514387, Los Angeles, CA 90051-4387. Also, PennyMac Loan Services,
LLC is a Delaware limited liability company, headquartered at 3043 Townsgate Rd, Suite 200,
Westlake Village, CA 91361.

3.       Defendant, Stanford L. Kurland, Executive Chairman, is a member of the Board
of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

4.       Defendant, James K. Hunt, is a member of the Board of Directors, with an office
located at P.O. Box 514387, Los Angeles, CA 90051-4387.

5.       Defendant, Matthew Botein, is a member of the Board of Directors, with an office
located at P.O. Box 514387, Los Angeles, CA 90051-4387.

6.       Defendant, Patrick Kinsella, is a member of the Board of Directors, with an office
located at P.O. Box 514387, Los Angeles, CA 90051-4387.

7.       Defendant, Joseph Mazzella, is a member of the Board of Directors, with an
office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

3

8.      Defendant, Anne D. McCallion, is a member of the Board of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

9.      Defendant, Farhad Nanji, is a member of the Board of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

10.     Defendant, David A. Spector, is a member of the Board of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

11.     Defendant, Theodore W. Tozer, is a member of the Board of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

12.     Defendant, Mark Wiedman, is a member of the Board of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

13.     Defendant, Emily Youssouf, is a member of the Board of Directors, with an office located at P.O. Box 514387, Los Angeles, CA 90051-4387.

14.     Defendant, JP MORGAN CHASE BANK, N.A. is a national bank with its principal place of business located at 270 Park Avenue, New York, New York 10017. JPMorgan Chase Bank, which conducts business nationwide, including services provided throughout the Commonwealth of Pennsylvania. Chase Home Finance LLC is a Delaware limited liability company and is a subsidiary of JP Morgan Chase Bank, N.A.

15.     Defendant, James Dimon, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

16.     Defendant, Linda B. Bammann, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

17.     Defendant, James A. Bell, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

4

18.    Defendant, Crandall C. Bowles, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

19.    Defendant, Stephen B. Burke is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.,

20.    Defendant, Todd A. Combs, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

21.    Defendant, James S. Crown, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

22.    Defendant, Timothy P. Flynn, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

23.    Defendant, Mellody Hobson, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

24.    Defendant, Laban P. Jackson, Jr., is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

25.    Defendant, Michael A. Neal, is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

26.    Defendant, Lee R. Raymond is a member of the Board of Directors, with an office located at 270 Park Ave, New York, New York 10017.

27.    Defendant, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Jennifer J. Johnson, or successor, Secretary of the Board, with an office located at Constitution Ave NW & 20th Street Northwest, Washington, DC 20551.

28.    Defendant, OFFICE OF THE COMPTROLLER OF THE CURRENCY (OCC), Sally G. Belshaw, or successor, Deputy Comptroller Large Bank Supervision, with an office

5

located at 400 7th Street, SW, Washington, D.C. 20219.

29.     Defendant, DELAWARE DEPARTMENT OF STATE, Jeffrey W. Bullock, or successor, Secretary of State, with an office located at 401 Federal St., Suite 3, Dover, DE 19901.

30.     Defendant, Kristine M. Anthou, Esq. is an attorney, employed by and under the supervision of the Law Firm of Grenen & Birsic, P.C., at One Gateway Center, Ninth Floor, Pittsburgh, PA 15222, and retained by Chase Home Finance.

31.     Defendant, Elizabeth M. Cagnon, is a notary public and paralegal, employed by and under the supervision of the Law Firm of Grenen & Birsic, P.C., at One Gateway Center, Ninth Floor, Pittsburgh, PA 15222, and retained by Chase Home Finance.

32.     Defendant, Grenen & Birsic, P.C. is the Law Firm, employed by and under the supervision of the Law Firm of Grenen & Birsic, P.C., at One Gateway Center, Ninth Floor, Pittsburgh, PA 15222, and retained by Chase Home Finance.

33.     Defendant, Whitney K. Cook. is an employee, employed by and under the supervision of Chase Home Finance. Chase Home Finance LLC is a Delaware limited liability company and is a subsidiary of JPMorgan Chase Bank, N.A. Defendant Cook address will be obtained upon discovery.

34.     Defendant, Brett L. Messinger, Esq. is an attorney, employed by and under the supervision of the Law Firm of Duane Morris, at 30 South 17th Street, Philadelphia, PA 19103, and retained by Chase Home Finance.

35.     Defendant, Duane Morris, is a Law Firm, employed by and under the supervision of the Law Firm of Duane Morris, at 30 South 17th Street, Philadelphia, PA 19103, and retained by Chase Home Finance.

36.     Defendant, Todd Martin (hereinafter ``Sheriff''), Sheriff of Monroe County, with an Office located at 610 Monroe Street, Stroudsburg, PA 18360.

37.     Defendant JOHN DOES 1-500 are the unknown defendants who aided and abetted in the violations of Plaintiff's rights and was the subject of the Defendants abused, fraud, unfair and deceptive business practices, as well as, the causes of actions stated herein. The names and identities of these Defendants are unknown to Plaintiff.

38.     Defendants stated above are referred to collectively herein as "Defendants."

## JURISDICTION AND VENUE

39.     Jurisdiction of this Court is based upon 42 U.S.C. Sections 1981, 1983, 1985, 1986 and the Fourth, Fifth, and Fourteenth Amendments to The Constitution of the United States.

40.     Jurisdiction is proper before this court pursuant to 12 U.S.C. § 2605, 15 U.S.C. § 1692, and 28 U.S.C. § 1331, and 1343(1), (3), and (4).  This Court has Jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367. The supplemental jurisdiction of this Court to hear related state courses of action is involved.

41.     The subject property is situated in this judicial district and the actions giving rise to this claim occurred in this judicial district, therefore venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

42.     This Court has authority to grant declaratory, injunctive, and monetary relief pursuant to 28 U.S.C Sections 1343, 2201, and 2202 and to award costs and attorneys' fees under 28 U.S.C. Section 2412.

7

## FACTUAL ALLEGATIONS

43.     On or about August of 2003, Plaintiff and her husband signed a mortgage agreement with Wachovia Corp. Plaintiff signature is clearly exhibited on the original wet ink note.

44.     In August of 2010, Defendant, Chase filed for Foreclosure against, my husband, Lundes Garrett.

45.     Defendant, Chase, submitted a complaint for foreclosure in 2010 (7192 CV 2010) and attached to their complaint a criminally manufactured assignment from MERS with robo-signing, attorney conflict of interest, forged notary, and did not attach a "NOTE", nor stating therein that they are holder in due course, or in possession of the note when they filed their complaint.

46.     When the assignment of mortgage is dissected you will find prima facie evidence of fraud.  Defendant's Mortgage foreclosure filed in the lower Court has an assignment of mortgage attached to it.

47.     Take notice that, Defendant's Attorney, is Kristine M. Anthou, Esq. whom is employed by Grenen & Birsic, P.C.  Let's Exhibit her signature.

48.     Plaintiff would like to highlight the criminal conspiracy. Let's take a look at a key component of this criminal conspiracy. Here we have Defendant's Attorney, Kristine M. Anthou, Esq., signing on the "Assignment of Mortgage", not as an Attorney.  Kristine M. Anthou is signing as a Certifying Officer.  Defendant's Attorney, Kristine M. Anthou, is deliberately and intentionally withholding the "Esq" on her name in order to create the illusion of a different person thereby deceiving the Court, and committing fraud by deception.

49.     Let's take a look at Elizabeth M. Cagnon. Here's a notary public, Elizabeth M. Cagnon, witnessing that Kristine M.Anthou, Defendant's Attorney, acknowledged herself to be

the Certifying Officer of Mortgage Electronic Registration Systems, also known as MERS. Not only is Elizabeth M. Cagnon a notary public, she is also a paralegal and is employed by Grenen & Birsic, P.C. Elizabeth M. Cagnon has committed perjury.

50.    The "Assignment of Mortgage" was criminally manufactured in the Law Office of Grenen & Birsic, P.C., by agents of Defendants to be presented to the Court. This is prima facie evidence that a crime has been committed by Defendant Chase, his attorney, and their agents in the Law Office of Grenen & Birsic, P.C. **Not only was the "Assignment" fabricated in the Law Office of Defendant's attorney, upon examination of the "Complaint", note the signature on the complaint, you see that the complaint was signed by Defendant's attorney, "Kristine M. Anthou, Esquire".**

51.    Defendants knew for a fact that this is prima facie evidence of fraud and perjury, and a criminal attempt at thief of property.

52.    Defendant Chase business conduct of filing an enormous amount of fraudulent and falsified assignments caused a massive amount of investigation by various government officials and 49 State attorney generals.

53.    While the government was investigating Defendant Chase, Plaintiff filed for bankruptcy protection against Defendant Chase abuses and attempt at thief of property.

54.    Defendant Chase filed a Motion for Relief of Stay, so that Defendant Chase can bring their complaint for foreclosure against Plaintiff June Garrett. Bankruptcy judge granted Defendant Chase motion, based upon the same fraudulent document which Defendant Chase has submitted in the State Court against Plaintiff's husband.

55.    Defendant Chase elected not to bring Plaintiff June Garrett into the foreclosure proceedings as a defendant.

56.     Defendant Chase was ordered to cease with any further foreclosure actions until the government concludes its investigation into Defendant Chase foreclosure abuses. The government investigation concluded in 2013.

57.     On January 30, 2013, Defendant Chase released the lien on Plaintiff's property.

58.     With no lien in place, six (6) months later, on July 2, 2013, Plaintiff filed for summary judgment. Defendant Chase was granted judgment when they did not have a lien.

59.     JP Morgan Chase entered into a Settlement and Consent Order of "Cease and Desist" in filing fraudulent documents with various Government Officials and Agencies, United States Trustee and forty-nine (49) Attorney Generals.

60.     As a condition of JP Morgan Chase settlement with the various Governments Officials and Agencies, United States Trustee and forty-nine State Attorney Generals, JP Morgan Chase was directed to identify Defendants as one of the enormous number of homeowners that JP Morgan Chase has falsified and fabricated assignment of mortgages and notes, and had submitted to the various states and federal courts throughout the United States.

61.     Plaintiff received notice of JP Morgan Chase fraud from the Federal Banking Regulators-the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System.

62.     On January 30, 2013, Defendant, JP Morgan Chase, provided Plaintiff with a letter stating, "We are writing to let you know that we are releasing the lien on your property related to the account reference below, as a result of a recent mortgage servicing settlement reached with the states and federal government".

63.     Defendant, JP Morgan Chase, letter to Plaintiff clearly states that JP Morgan Chase no longer has a lien on her property. The letter further states:

"This means that your lien will be released and your account will be cancelled. You don't need to sign or return anything for this to happen.

We will:

- Release the lien held by Chase and forward the release to your county records office for processing. Depending on your county's procedures, this may take several months.

- No longer be responsible for securing the property and/or providing maintenance required by the city if the property is vacant

You will need to:

- Contact your insurance company and/ or taxing authority to make arrangements for paying any remaining or new amounts due to them.

- Pay any taxes and/or insurance premiums associated with the property".

64.     Plaintiff received this letter from Defendant, JP Morgan Chase, admitting to their mortgage foreclosure fraud on the courts and Plaintiff.

65.     Accompanying Defendant, JP Morgan Chase's letter, is a "Frequently Asked Questions". The First two (2) questions states:

Q:     Why are you releasing my lien and cancelling my account?

A:     Chase and four other mortgage servicers have agreed to a mortgage servicing settlement with the states and federal government. As part of the settlement, we are releasing your lien and cancelling your account. For more information, visit nationalmortgagesettlement.com.

Q:     Will Chase release the lien on the property?

A:     Yes. We will release the lien held by Chase and forward the release to your county records office for processing. Depending on your county's procedures, this may take several months.

66.     On April 12, 2013, Defendant, JP Morgan Chase, through the Independent Foreclosure Review provided Plaintiff with a check for $1000.00, and a letter that stated, "You were recently sent a notice that you are eligible to receive a payment as a result of an agreement

between federal banking regulators and JPMorgan Chase in connection with an enforcement action related to deficient mortgage servicing and foreclosure processes".

67.     On or about July 2, 2013, Defendant, JP Morgan Chase, filed for Summary Judgment. Defendant, JP Morgan Chase, once again, resubmitted the same criminally manufactured assignment from MER, with robo-signing, attorney conflict of interest, and forged notary, even though, Defendant, JP Morgan Chase, no longer has a lien on Plaintiff's property, as of January 30, 2013. This act constitutes a clear violation of the settlement mentioned above.

68.     With further violation of the settlement agreement, Defendant, JP Morgan Chase created an assignment to PennyMac Corp., even though, Defendant, JP Morgan Chase, no longer has a lien on Plaintiff's property, as of January 30, 2013.

69.     The settlement and lien release are both legally binding.

70.     While, Defendant, JP Morgan Chase had "no lien" as of January 30, 2013, they continued in fraud and abusive conduct by filing for summary judgment, falsifying another assignment to Defendant, PennyMac, and continues to misrepresent the facts.

71.     **Plaintiff was identified by the Independent Foreclosure Review Board as a victim of Defendant "FRAUD" in the foreclosure process, and documents submitted to the Courts factually supports a finding that Defendants has committed fraud, and conspired to steal property.**

72.     Plaintiff filed a Complaint with the Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC") concerning Defendants filing for the second time a fraudulent and criminally manufactured "Assignment of Mortgage" in support of their Summary Judgment motion, in which Defendant signed a Consent Judgment of Cease and Desist, and would be assessed up to 5 million dollar for Contempt.

73.     Based upon the total lack of concern for Defendants continued fraud, abuse, unfair and deceptive business practices, upon information and belief, the Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC") is in a conspiracy along with Defendants, to allow and support Defendant Chase continuance of fraud, abuse, unfair and deceptive business practices.

74.     The Defendants conspired to aid and abet each other in the thief of Plaintiff's property.

75.     Defendants conspiracy surrounding the settlement, was nothing but a diversion tactic designed to camouflage the real thief of property. Defendants ran a scheme on Plaintiff whereby Defendants Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC") orders Defendant Chase to pay $1000.00 to Plaintiff for foreclosure abuse, which represents one percent (1%) of the value of Plaintiff's property.

76.     Defendants, Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC"), will allow, without any regulation from them, Defendants to continue with the thief of property, and make profit of 99% (i.e. $399,000.00 off a home worth $400,000.00).

77.     Defendants, Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC"), by their gross, deliberate and intentional negligence has contributed to Defendants fraud, abuses, unfair and deceptive business practices.

78.     Defendants Chase and PennyMac are both registered businesses in the State of Delaware. Defendant, Secretary of State of Delaware, is charged with the monitoring authority of each and every business that is registered in its State. Defendants Chase and PennyMac has an enormous number of incidents in which their business practices violates the laws of the United

States. Defendant, Secretary of State of Delaware, "), by their gross, deliberate and intentional

negligence has contributed to Defendants fraud, abuses, unfair and deceptive business practices.

79.     Defendants Chase and PennyMac, attorneys and law firms, conspired with

Defendants, and did in fact submitted and misrepresented documents to the court knowing that

said documents were false.

80.     Defendants Chase and PennyMac attorneys is charged with the duties, owed to

their client, to examine the county records to ensure that their client have the right to foreclosure.

81.     Upon information and belief, Defendants Chase and PennyMac attorneys examine

the county records and knew for a fact that Defendant Chase is not listed, anywhere, in the chain

of titles and assignments.

82.     Defendants Chase and PennyMac attorneys and law firm deliberately and

intentionally elected to aid and abet Defendant Chase and PennyMac in submitting false and

fraudulent documents to the courts, as well as, misrepresents the facts.

83.     Defendants Chase and PennyMac attorneys and law firm utilized their license, for

a fee, to commit the crime of thief of property.

84.     Defendants has failed to join an indispensable party, Plaintiff, June Garrett, in

light of the fact that Defendants had full knowledge of June Garrett as a co-owner.

85.     On April 1st, 2011, Defendants filed a motion in the Bankruptcy court seeking

relief of stay, so that they could bring Plaintiff to State court pursuant to Defendant's foreclosure

complaint. Defendants failed to join Plaintiff.

86.     On August 30, 2017, Defendants stated in their objection to Plaintiff chapter 13

plan that Plaintiff, **"June Garrett, is the owner of the property located at 8 ROSE DRIVE,

A/K/A 127 ROSE DRIVE, SAYLORSBURG, PA 18353-8444".**

14

87.     Plaintiff, June Garrett, never received "notice" of the proceedings so that she may protect her interests and rights.

88.     Plaintiff, June Garrett, interests and rights were violated by the total lack of due process. Defendants had full knowledge of Plaintiff's interests and rights, and failed to provide her with notice of complaint, sheriff sale and ejectment proceedings, thereby violating her rights to due process.

89.     Plaintiff, June Garrett, interest and rights were not represented as she was not joined, and her due process rights were violated, pursuant to Plaintiff's judgment and sale of her property. There is no judgment in any court of law against Defendant's wife, June Garrett, rights and interests in her property of 127 Rose Drive, Saylorsburg, PA 18353.

90.     Plaintiff's sheriff sale was based upon collusion/conspiracy and fraud, lack of service, and lack of personal and subject matter jurisdiction, and a violation of due process rights

91.     Pursuant to a writ of execution, a sheriff's sale of Plaintiff's residence was scheduled on September 24, 2015. Defendants PennyMac and Sheriff Todd colluded to falsify that Plaintiff's property was sold on April 28, 2016. When in fact it was sold on July 29, 2016 in secrecy with no bidders, and the highest bidder at the sale was PennyMac's attorney, the attorney on the writ of execution, for a low amount of $2197.16.

a)     On March 19, 2018, Plaintiff served Defendant Todd with a Petition to Intervene, Petition to Strike, and Notice and Request for Prompt Hearing. Pennsylvania law states: Pursuant to Pa.R.Civ.P. Rule 2967, and 3121, attached hereto is Defendant's Petitions. Pursuant to Pa.R.Civ.P Rule 2958.3(b): **The sheriff shall immediately notify the plaintiff of the filing of the petition.** Pursuant to Pa.R.Civ.P Rule 2958.3(c): **The sheriff shall immediately present the matter to**

15

the court.

Pursuant to Pa.R.Civ.P Rule 2958.3(d): **Execution proceedings shall be stayed during the period from the time the defendant files the hearing request form with the sheriff to the time the court makes the determination on the request.**

      b)     On March 28, 2018, Defendants Todd Martin, and PennyMac, without complying with the law above, and failing to provide a prompt hearing, and failing to stay execution, ejected Plaintiff and her family from her property, and forced Plaintiff out of her home without any due process afforded the Plaintiff.

      c)     Defendants Todd Martin and PennyMac have confiscated all of Plaintiff's and her family personal property, and refuses to return them to her. Defendants stated that they are taking this action because Plaintiff's husband has filed too many lawsuits against them.

      92.     Government Officials is bounded by law to report all crime(s) that is committed. Failure can result in charges of aiding and abetting in the covering up of the crime(s), and the failure to report a crime(s), as well as negligent in the performance of duties.

      93.     Defendants engaged in trade or commerce in the Commonwealth of Pennsylvania and is subject to the consumer protection laws of the Commonwealth of Pennsylvania in the conduct of their debt collection, and foreclosure activities. The consumer protection laws of the Plaintiff State include laws prohibiting unfair or deceptive practices.

      94.     Under the Commonwealth of Pennsylvania consumer protection laws, Defendants is prohibited from engaging in unfair or deceptive practices with respect to Plaintiff.

      95.     In the course of their conduct, management and oversight of loan servicing in the Commonwealth of Pennsylvania, Defendants have engaged in a pattern of unfair and deceptive practices.

96.     Defendants failure to follow appropriate foreclosure procedures, and related

unfair and deceptive practices include, but are not limited to, the following:

a)  preparing, executing, notarizing or presenting false and misleading
    documents, filing false and misleading documents with courts
    and government agencies, or otherwise using false or misleading
    documents as part of the foreclosure process (including, but not limited to,
    affidavits, declarations, certifications, and assignments);

b)  preparing, executing, or filing affidavits in foreclosure
    proceedings without personal knowledge of the assertions in the affidavits
    and without review of any information or documentation to verify the
    assertions in such affidavits. This practice of repeated false attestation of
    information in affidavits is popularly known as "robosigning." Where
    third parties engaged in robosigning on behalf of the Defendant, they did so
    with the knowledge and approval of the Defendant;

c)  executing and filing affidavits in foreclosure proceedings
    that were not properly notarized in accordance with applicable state law;

d)  misrepresenting the identity, office, or legal status of the affiant executing
    foreclosure-related documents;

97.     As a result of the use of inadequate bankruptcy procedures, the conduct of the

Defendants or their agents has resulted in, among other things, some or all of the following:

a)  making representations that were inaccurate, misleading, false, or for which
    the Defendant, at the time, did not have a reasonable basis to make, including
    without limitation representations contained in proofs of claim under 11
    U.S.C. § 501, motions for relief from the automatic stay under 11 U.S.C. §
    362, or other documents;

b)  filing proofs of claim, motions for relief from stay, or other documents that
    failed to include documentation required under the Federal Rules of
    Bankruptcy Procedure, local court rules, local court standing orders, or other
    applicable rules or law, such as the original or a duplicate of the writing on
    which the secured claim is based, evidence that the security interest has been
    perfected, a statement setting forth the terms of and any documentation of a
    transfer of the claim, or other documentation;

c)  filing proofs of claim, motions for relief from stay, or other documents that
    inaccurately represented or failed to document ownership of the claim or right
    to seek relief;

d) filing proofs of claim, motions for relief from stay, or other documents that inaccurately or falsely represented they were signed by a person with direct knowledge of the matters alleged in the filing;

e) filing affidavits or other documents requiring notarization where the Defendants inaccurately or falsely represented that the documents were validly notarized;

98. Defendants implemented and relied upon inadequate bankruptcy procedures despite having actual or constructive notice that such procedures could, and did, lead to the errors described above.

99. Use of these bankruptcy procedures has also resulted in the Defendants seeking inappropriate relief from debtors under the Bankruptcy Code, including under 11 U.S.C. §§ 362 and 501, and in violation of 11 U.S.C. § 524.

## COUNT 1
## CONTEMPT OF CONSENT JUDGMENT OF CEASE ANDS DESIST

100. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

101. Defendants under Order by the Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC") and consenting thereto, violated the Order of Cease and Desist, in unfair and deceptive acts, and to cease and desist in the filing of fraudulent documents. Defendants violated said Order by continuing said prohibited acts, in that Defendants continued to file numerous criminally manufactured fraudulent, fabricated, falsified and forgery documents.

102. The acts, misrepresentations and omissions of Defendants and their agent described herein violated the Laws of the United States, and Plaintiff, as a direct result, was damaged. As a result of the above alleged wrongs, Plaintiffs have suffered actual, special and

punitive damages in an amount to be determined at trial.

## COUNT II
## UNFAIR AND DECEPTIVE CONSUMER PRACTICES
## UNFAIR TRADE PRACTICES AND CONSUMERS PROTECTION LAW

103.    Plaintiff realleges and incorporates by reference all paragraphs above, as though
fully set forth in this cause of action.

104.    The foreclosure processing conduct of the Defendants, as described
above, constitutes unfair or deceptive practices in violation of the consumer protection laws of
Pennsylvania.

105.    Defendants unlawful conduct has resulted in injury to Plaintiff. The
harm sustained by Plaintiff includes loss of homes due to improper, unlawful, or
fraudulent foreclosures, and subversion of the legal process and the sustained violations of
the laws.

106.    The acts, misrepresentations and omissions of Defendants and their agent
described herein violated the Laws of the United States, and Plaintiff, as a direct result, was
damaged. As a result of the above alleged wrongs, Plaintiffs have suffered actual, special and
punitive damages in an amount to be determined at trial.

## COUNT III
## WRONGFUL FORECLOSURE

107.    Plaintiff realleges and incorporates by reference all paragraphs above, as though
fully set forth in this cause of action.

108.    Defendants engaged in a fraudulent foreclosure of Plaintiff Property in that
Defendants did not have the legal authority to foreclose on Plaintiff Property and, alternatively, if
they had the legal authority, they failed to comply with the laws of the United States.

109.    The acts, misrepresentations and omissions of Defendants and their agent

described herein violated the Laws of the United States, and Plaintiff, as a direct result, was damaged. As a result of the above alleged wrongs, Plaintiffs have suffered actual, special and punitive damages in an amount to be determined at trial.

**COUNT IV**
**DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 and 2202**
**REGARDING DEFENDANT BANKRUPTCY MISCONDUCT**

110.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

111.    Defendants implemented and relied on inadequate bankruptcy procedures and thereby have prejudiced Plaintiff, and constitute a continuing abuse of the bankruptcy process.

112.    Defendants implemented and relied on inadequate bankruptcy procedures and thereby have violated the standards of conduct required of creditors by applicable law, including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or have caused violations of such law.

113.    Defendants implemented and relied upon inadequate bankruptcy procedures that abused the bankruptcy process.

114.    Defendants unlawful conduct has resulted in injury to Plaintiff in bankruptcy who have had their home loans serviced by Defendants. The harm sustained by Plaintiff includes loss of homes due to improper, unlawful, or undocumented foreclosures.

115.    The acts, misrepresentations and omissions of Defendants and their agent described herein violated the Laws of the United States, and Plaintiff, as a direct result, was damaged. As a result of the above alleged wrongs, Plaintiffs have suffered actual, special and punitive damages in an amount to be determined at trial.

**COUNT V**
**TO VOID OR CANCEL ASSIGNMENT OF DEED OF TRUST**

116.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

117.    The assignment of the deed of trust is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the MERS did not have standing or the legal authority to assign the deed of trust which purportedly secured the Note, and which served as the basis for a claim to have the right to conduct a judicial foreclosure. Thus, the assignment of the deed of trust was at all times void.

118.    Plaintiff is therefore entitled to an order that the Assignment of the Deed of Trust is void ab initio and cancelling such Assignment, and further ordering the nullification of the unlawful assignments filed in the Monroe County Court of Records.

119.    The acts, misrepresentations and omissions of Defendants and their agent described herein violated the Laws of the United States, and Plaintiff, as a direct result, was damaged. As a result of the above alleged wrongs, Plaintiffs have suffered actual, special and punitive damages in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT

120.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

121.    By their wrongful acts and omissions, the Defendant have been unjustly enriched at the expense of Plaintiff, and thus Plaintiff have been unjustly deprived.

122.    By reason of the foregoing, Plaintiff seek restitution from the Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Defendants from their wrongful conduct.

21

123.    The acts, misrepresentations and omissions of Defendants and their agent described herein violated the Laws of the United States, and Plaintiff, as a direct result, was damaged. As a result of the above alleged wrongs, Plaintiffs have suffered actual, special and punitive damages in an amount to be determined at trial.

## COUNT VII
## CIVIL RICO

124.    Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

125.    At all relevant times, Plaintiff were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

126.    At all relevant times, Defendants, and the Conspirators were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

127.    At all relevant times, Defendants, and the Conspirators formed an association-in-fact for the purpose of defrauding Plaintiff, innocent and unsuspecting, in the Commonwealth of Pennsylvania. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C § 1961(4).

128.    At all relevant times, Defendants and the other Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

129.    Specifically, at all relevant times, Defendants and the other Conspirators engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above. The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); section 1344 (relating to

financial institution fraud); section 1951 (relating to interference with commerce, robbery, or extortion); section 1956 (relating to the laundering of monetary instruments); section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity); Defendants and the other Conspirators each committed and/or aided and abetted the commission of two or more of these acts of racketeering activity.

130. The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). The acts alleged were related to each other by virtue of common participants, a common victim (the Plaintiff), a common method of commission, and the common purpose and common result of defrauding the Plaintiff and others similarly situated of thousands of dollars and enriching the Conspirators at the Plaintiff's expense while concealing the Conspirators' fraudulent activities. The fraudulent scheme continued for over eight years and threatens to continue despite the institution of this Complaint.

131. As a result of Defendants and the other Conspirators' violation of 18 U.S.C. § 1962(c), the Plaintiff have lost nearly all their savings as a result of the racketeering activities conducted in the fraudulent scheme and as part of the prohibited activities herein alleged.

132. As a result of their misconduct, Defendants are liable to the Plaintiff for their losses in an amount to be determined at trial.

133. Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiff are entitled to recover threefold their damages plus costs and attorneys' fees from Defendants.

## COUNT VIII
## RICO CONSPIRACY

134. Plaintiffs reallege and incorporate by reference all paragraphs above, as though

fully set forth in this cause of action.

135.    At all relevant times, the Plaintiff were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

136.    At all relevant times, Defendants and the Conspirators were each a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

137.    At all relevant times, Defendants and the Conspirators formed an association-in-fact for the purpose of defrauding the Plaintiff. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

138.    At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

139.    As set forth in Count Two, Defendants and each of the other Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

140.    At all relevant times, Defendants and the other Conspirators each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

141.    Defendants and the other Conspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

142.    As a result of Defendants and the other Conspirators' violations of 18 U.S.C. § 1962(d), the Plaintiff have lost hundreds of thousands of dollars in the fraudulent schemes

Defendants created, organized, serviced, and continue to operate and run.

143.     As a result of the Conspiracy, Defendants are liable to the Plaintiff for his losses in an amount to be determined at trial.

144.     Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiff is entitled to recover threefold his damages plus costs and attorneys' fees from Defendants.

## COUNT IX
## RICO EXTORTION

145.     Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

146.     At all relevant times, the Plaintiff were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

147.     At all relevant times, Defendants and the Conspirators were each a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(d).

148.     At all relevant times, Defendants and the Conspirators formed an association-in-fact for the purpose of defrauding the Plaintiff. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).

149.     At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

150.     As set forth in Count Three, Defendants and each of the other Conspirators associated with this enterprise conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

151.     At all relevant times, Defendants and the other Conspirators each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to

25

conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

152.    Defendants and the other Conspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth above and including repeated threats of foreclosure in an effort to deprive Plaintiff of their legal and beneficial interest in their homes if they did not pay the unlawful loans that Defendants created for Plaintiff.

153.    As a result of Defendants and the other Conspirators' violations of 18 U.S.C. § 1962(b)(c), the Plaintiff have lost hundreds of thousands of dollars in the fraudulent schemes Defendants created, organized, serviced, and continue to operate and run. The threat of imminent foreclosure is but one of the unlawful activities that Defendants engage in through a pattern of racketeering activity and the collection of unlawful debts.

154.    As a result of the Defendants actions and associations with an enterprise engaged in interstate and foreign commerce, Defendants are liable to the Plaintiff for his losses in an amount to be determined at trial.

155.    Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiff is entitled to recover threefold their damages plus costs and attorneys' fees from Defendants.

## COUNT 10
### CONSPIRACY AND AIDING AND ABETTING

156.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

157.    The Defendants agreed amongst themselves to take the illegal and improper actions described above, including taking actions that violated the laws of the United States

and various common law duties, to reach the goal of maximizing their financial benefit from Defendants illegal and unlawful activities at the expense of Plaintiff.

158.    The Defendants' actions were undertaken with actual malice in that they were motivated by a desire to deceive Plaintiff.

159.    As a result of the Defendants' conspiracy, Plaintiff suffered, and will continue to suffer, considerable damages.

### COUNT XI
### QUIET TITLE (AS TO ALL DEFENDANTS)

160.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

161.    At all times herein, Defendants committed acts of misrepresentations and fraud as to the terms of the loan, mortgage, and value of the property with the intent to exert undue influence.

162.    Plaintiff were under unfair persuasion amounting to undue influence because Defendants positioned themselves in the market where the Plaintiff was justified in assuming that the Defendants would not act in a manner inconsistent with Plaintiffs welfare and best interests.

163.    At all times herein, Defendants gained unfair persuasion and undue influence by improper means including but not limited to misrepresentations, undue flattery, and fraud.

164.    Defendants by fraud manipulated an iniquitous mortgage to Plaintiff Property, on or about August, 2003, of which Plaintiff has no knowledge of, and signed no documents for a loan application with neither Wachovia nor the Defendants. This manipulation and iniquitous mortgage would not have taken place but for Defendants' wrongful conduct.

165.    Defendants have created an illegal cloud on title. Plaintiffs have suffered severe

financial hardship as a result. Plaintiff requests that the Court invalidate the deed of trust and mortgage on Plaintiff's property.

## COUNT XII
## NEGLIGENCE

166.    Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 34, inclusive, as though fully set forth herein.

167.    At all times relevant herein, Defendants, Board of Governors of The Federal Reserve System, and Office of the Comptroller of the Currency ("OCC"), and Secretary of State Delaware, by their gross, deliberate and intentional negligence has contributed to Defendants fraud, abuses, unfair and deceptive business practices.

168.    In failing to take the actions as alleged above, Defendants had caused by their gross, deliberate and intentional negligence has contributed to Defendants fraud, abuses, unfair and deceptive business practices.

169.    As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiffs suffered general and special damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

170.    Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

171.    Pursuant to Fed. R. Civ. P. 38(b), the Plaintiff demand a trial by jury of all issues raised in this Complaint and triable as of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court:

1.   Assume jurisdiction of this case;

2.   Sit a Jury;

3.   Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(1);

4.   Award statutory damages in the amount of twice the finance charge in accordance with 15 U.S.C. § 1640(a)(2);

5.   Award plaintiff costs and reasonable attorneys fees in accordance with 15 U.S.C. § 1640;

6.   Award punitive damages for intentional infliction of emotional distress, and repeated violations in regards to the continual submission of fraudulent documents to the courts, in the amount of Fifteen Million Dollars ($15,000,000.00); awarded against each defendant;

7.   Issue a Declaratory Injunction ordering the Defendants to return Plaintiff's property, and Plaintiff requests that the Court invalidate the deed of trust and mortgage on Plaintiff's property, and order Defendants to return personal property, illegally confiscated;

8.   Quiet Title on Plaintiffs' property, as to any and all defendants;

9.   Award such other actual, special, and punitive damages, and other equitable relief as the court deems appropriate.

Dated: March 29, 2018

June Garrett, Plaintiff, Pro Se
127 Rose Drive
P.O. Box 571
Saylorsburg, PA 18353